**OIL BASE, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 20073.**

United States Court of Appeals
Ninth Circuit.

May 23, 1966.

Wilson B. Copes, Los Angeles, Cal., for petitioner.

C. Moxley Featherston, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Stephen H. Paley, Attorneys, Dept. of Justice, Washington, D. C., for respondent.

Before MERRILL and BROWNING, Circuit Judges, and THOMPSON, District Judge.

MERRILL, Circuit Judge.

Petitioner as taxpayer seeks review of a Tax Court decision respecting income taxes for the taxpayer's fiscal year ending September 30, 1959. The case involves allocation of income between the taxpayer and its subsidiary, a wholly owned Venezuela corporation, Oil Base de Venezuela, C. A. (hereinafter referred to as "Obvenca"), which, during the year in question, served as taxpayer's foreign sales representative.

The income derived by Obvenca was attributable to commissions and discounts allowed by the taxpayer pursuant to an agreement between the two companies. Finding these commissions and discounts to be roughly twice as large as those paid or allowed by taxpayer in agreements with five separate uncontrolled foreign sales representatives (including Obvenca's Venezuelan predecessor and three of Obvenca's subagents), the Commissioner, under section 482, Internal Revenue Code of 1954,[1] rejected the terms of the agreement as not clearly reflecting the income of the parties and having the effect of improperly shifting income from taxpayer to its controlled foreign subsidiary. Pursuant to Treasury Regulations [2] the Commissioner allocated to taxpayer that income which the arm's-length arrangements with uncontrolled foreign sales representatives would have produced.[3]

1. Internal Revenue Code of 1954:
"SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades, or businesses." (26 U.S.C. 1958 ed., Sec. 482.)

2. Section 1.482–1(b) provides in part:
"*Scope and purpose.* (1) The purpose of section 482 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true taxable income from the property and business of a controlled taxpayer."

Section 1.482–1(a) (6) provides:
"The term 'true taxable income' means, in the case of a controlled taxpayer, the taxable income (or, as the case may be, any item or element affecting taxable income) which would have resulted to the controlled taxpayer, had it in the conduct of its affairs (or, as the case may be, in the particular contract, transaction, arrangement, or other

act) dealt with the other member or members of the group at arm's length. It does not mean the income, the deductions, the credits, the allowances, or the item or element of income, deductions, credits or allowances, resulting to the controlled taxpayer by reason of the particular contract, transaction, or arrangement, the controlled taxpayer, or the interests controlling it, chose to make (even though such contract, transaction, or arrangement be legally binding upon the parties thereto)."

3. The Commissioner explained his adjustment to the taxpayer as follows:
"It is determined that commissions paid and discounts allowed to your controlled foreign subsidiary, Oil Base de Venezuela, C. A. were excessive in amount and had the effect of improperly shifting income from you to your controlled foreign subsidiary, thereby distorting your income and the income of your subsidiary. Furthermore, sales commissions were paid to Oil Base de Venezuela on certain sales occurring outside of Venezuela which were, in substance, your sales and on these sales no commissions are being allowed under this determination. In determining the proper amount allowable as commissions and discounts paid to Oil Base de Venezuela, C. A. where some amount is properly allowable, the determination has been based on arm's length negotiated rates between yourselves and uncontrolled parties on identical goods and services. This issue involves application of sections 61 and 482 of the Internal Revenue Code of 1954."

The Tax Court supported the Commissioner. We agree.

■ As stated by the Tax Court in its opinion:

"The burden is on petitioner to show error in respondent's allocation and respondent's determination must be sustained unless it is unreasonable, arbitrary or capricious."

Taxpayer contends here, as it did before the Tax Court, that the Commissioner has erred in establishing by regulation and using here a standard of arm's-length bargaining. Taxpayer points out that no such standard is contained in the statute. It contends that under the statute the question is not what income arm's-length bargaining would have produced, but what income properly is attributable to each of the two commonly held corporations as its true net income in light of what each performs or produces. Relying on this court's decision in Frank v. International Canadian Corporation, 308 F.2d 520, 528–529 (9th Cir. 1962), it contends that in the present case the question is whether the income reported by taxpayer is a fair and reasonable return on its retained manufacturing activity.[4]

■ We cannot agree. Where, as here, the extent of the income in question is largely determined by the terms of business transactions entered into between two controlled corporations it is not unreasonable to construe "true" taxable income as that which would have resulted if the transactions had taken place upon such terms as would have applied had the dealings been at arm's length between unrelated parties.

Frank v. International Canadian Corporation, supra, did not hold that the arm's-length standard established by regulation was improper. It held that it was not "the *sole* criterion" for determining the true net income of each controlled taxpayer. However, permissible departure from the regulation's arm's-length standard was, under the facts of that case, very narrowly limited[5] and the holding has no application to the facts before us.

We conclude that the arm's-length bargaining standard was properly applied pursuant to regulation. Hall v. Comm'r, 294 F.2d 82 (5th Cir. 1961).

Taxpayer contends that certain factors bearing on Obvenca's business activities distinguish its situation from that of its predecessor and render the arm's-length history irrelevant and its return inadequate. It contends that adjustment should be made to compensate for these factors and that doubling the commissions and discounts previously paid was reasonable adjustment.

The Tax Court considered these factors and rejected taxpayer's contentions with respect to them. For the reasons expressed by the court we do not regard this ruling as arbitrary or unreasonable under the circumstances.

Affirmed.

---

4. Taxpayer asserts that this has been conclusively established by proof that even after payment of the commissions and allowances of the discounts in question, it has realized a higher return on its manufacturing activity in respect to foreign sales than it has in respect to its domestic sales. The Tax Court dismissed this contention with the comment:

"There is no evidence to show that the percentage return retained by petitioner on domestic sales would represent a reasonable return on its export sales."

5. It was held: (1) that where the pretrial order pursuant to stipulation specified that the standard to be applied was "reasonable price and profit," the District Court was not in error in applying that standard; and (2) that the court was not in error in holding the price and profit to be reasonable where (a) the price charged resulted in a reasonable return to the retained manufacturing activity, and (b) there was no evidence that arm's-length bargaining upon the specific commodities sold had produced a higher return. Further, from the complexity of the circumstances surrounding the services rendered by the subsidiary it appears that it would have been difficult for the court to hypothesize an arm's-length transaction.