**LUFKIN FOUNDRY AND MACHINE COMPANY, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**LUFKIN FOUNDRY AND MACHINE COMPANY INTERNATIONAL, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 72–1084.**

United States Court of Appeals, Fifth Circuit.

Aug. 24, 1972.

Rehearing and Rehearing En Banc Denied Nov. 3, 1972.

---

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Division, Dept. of Justice, Washington, D. C., K. Martin Worthy, Chief Counsel, Lee H. Henkel, Jr., Chris J. Ray, Internal Revenue Service, Washington, D. C., Thomas L. Stapleton, David English Carmack, Attys., Dept. of Justice, Washington, D. C., for respondent-appellant.

Marcellus R. Meek, Thomas M. Haderlein, John C. Klotsche, Chicago, Ill., for petitioners-appellees; Baker & McKenzie, Chicago, Ill., of counsel.

Before TUTTLE, COLEMAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

 The issue on this appeal concerns the kind of evidence a taxpayer must submit to overcome the Commissioner's presumption of correctness in a Section 482 allocation suit. 26 U.S.C.A. § 482 (1967).[1] Specifically, the question is, can any quantum of evidence as to a taxpayer's internal transactions with its own subsidiaries, standing alone, be sufficient to establish arm's length dealing between them? We hold that it cannot.

Lufkin Foundry and Machine Company (Lufkin), a Texas corporation, sells its oil field machinery to Lufkin Foundry and Machine Company International (Lufkin International), a wholly owned Texas subsidiary of Lufkin, which in turn resells the machinery throughout the Western Hemisphere exclusive of the United States. Lufkin International receives a discount of 20% off the list price for all machinery it resells to Lufkin Machine Co., Ltd. (Lufkin Canada), a Canadian corporation wholly owned by Lufkin which sells Lufkin machinery in Western Canada. Lufkin Canada receives a 10% discount from Lufkin International. For Lufkin International's remaining sales, a commission of 20% of the net invoice price is paid by Lufkin. A third Lufkin wholly owned sub-

---

1. In any case of two or more organizations, trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

sidiary is Lufkin Overseas Corporation, S. A. (Lufkin Overseas), a Venezuelan corporation, which also receives a 20% commission on its sales of Lufkin machinery. Lufkin Overseas sells machinery in all parts of South America except Venezuela, which is Lufkin International's domain.

The Commissioner, exercising his power under Section 482 to allocate items of income, deductions, and credits between controlled businesses in order to prevent evasion of taxes or to clearly reflect income, allocated to Lufkin 50% of the commissions paid to Lufkin International and Lufkin Overseas, and 50% of the discount given to Lufkin International on its sales to Lufkin Canada. In the Tax Court, Lufkin presented evidence prepared by an independent certified public accountant of the reasonableness of the discounts and commissions, taking into account the vicissitudes inherent in the manner in which Lufkin transacted its international business. The Tax Court held that this evidence was sufficient to overcome the presumption of correctness. Since the Commissioner failed to adduce evidence in his own behalf, the court held he abused his discretion in making the above allocations. The Commissioner has appealed.

 The parties do not dispute the general proposition that Lufkin was required to present evidence sufficient to establish that the discounts and commissions it gave would not have varied had one uncontrolled taxpayer dealt at arm's length with another uncontrolled taxpayer. 26 C.F.R. § 1.482–1(b)(1) (1972).[2] This is the generally accepted standard of evidence necessary to overcome the presumption of correctness and to establish the arbitrariness of the Commissioner's allocations. Wisconsin Big Boy Corp. v. CIR, 452 F.2d 137 (7th Cir.

1971); Baldwin-Lima-Hamilton Corp. v. United States, 435 F.2d 182 (7th Cir. 1970); Young & Rubicam, Inc. v. United States, 410 F.2d 1233, 187 Ct.Cl. 635 (1969); Spicer Theatre, Inc. v. CIR, 346 F.2d 704 (6th Cir. 1965). Lufkin contends, however, that it is possible to comply with this requirement by producing and analyzing evidence of its own marketing arrangements. The Commissioner argues that such a taxpayer must produce some probative evidence of prices charged between unrelated and uncontrolled companies to meet the concededly correct standard, or it will be rendered meaningless.

The Treasury Department has promulgated a Regulation, 26 C.F.R. § 1.482–2 (1972), to assist in the implementation of the arm's length standard. Specifically, this Regulation delineates the methods by which one can calculate whether or not the controlled companies dealt with each other at arm's length. For instance, Section 1.482–2(e) applies to those transactions in which Lufkin sold or otherwise disposed of its equipment to its subsidiaries. Subsection (e)(1)(i) states that allocations will be made to reflect an arm's length price for such sales or dispositions. Thus, it is evident that arm's length prices are the beginning point in recomputing the appropriate income applicable to each of the corporations. The subsection further states that "[a]n arm's length price is the price that an unrelated party would have paid under the same circumstances for the property involved in the controlled sale."

Subsection (e)(1)(ii) prescribes the three methods by which an arm's length price is determined. Subsections (e)(2), (3), and (4) outline in detail the three methods. They are the comparable uncontrolled price method, the resale

2. His object is to arrive at the true net income of each controlled taxpayer and the technique used is the application of the standard of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer. Whenever the lack of an arm's length relationship produces a different economic result from that which would ensue in the case of two uncontrolled taxpayers dealing at arm's length, the Commissioner is authorized to allocate gross income and deductions. Spicer Theatre, Inc. v. CIR, 346 F.2d 704, 706 (6th Cir. 1965).

price method, and the cost plus method. Although these subsections are too prolix to warrant explication in this opinion, a careful reading of them demonstrates that evidence of the transactions of uncontrolled companies unrelated to the taxpayer must necessarily be presented. *See* American Terrazzo Strip Co. v. CIR, 56 T.C. 961 (1971).

Furthermore, subsection (e)(1)(iii) states that where the standards set out in the regulations indicate that one of the three methods is applicable, the taxpayer may avoid its application only by demonstrating that some other pricing method is clearly more appropriate. Lufkin has not shown that each of the three methods is inapplicable, nor has it shown that a more appropriate method ought to be utilized. In fact, it does not appear that this Regulation was called to the attention of or considered by the Tax Court.

As for those transactions where Lufkin paid a commission to its subsidiaries rather than executing an outright sale, Section 1.482–2(b) applies. This section deals with, *inter alia*, the performance of marketing services by one corporation for another member of the same corporate family. The thrust of the section is directed toward a determination of an arm's length charge for these services. An arm's length charge is defined as the "amount which was charged or would have been charged for the same or similar services in independent transactions with or between unrelated parties under similar circumstances considering all relevant facts."

No amount of self-examination of the taxpayer's internal transactions alone could make it possible to know what prices or terms unrelated parties would have charged or demanded. We think it palpable that, if the standard set by these unquestioned regulations is to be met, evidence of transactions between uncontrolled corporations unrelated to

Lufkin must be adduced in order to determine what charge would have been negotiated for the performance of such marketing services.

Finally, the Supreme Court has recently said that the " 'purpose of section 482 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer . . . . ' " CIR v. First Security Bank of Utah, 405 U.S. 394, 400, 92 S. Ct. 1085, 1093, 31 L.Ed.2d 318 (1972) [quoting 26 C.F.R. § 1.482–1(b)(1) (1971)]. Under this latest authority it remains obvious that a court cannot discern whether a disparity in tax treatment exists if it has only evidence of what has occurred in controlled situations. Therefore, some evidence of similar business activities between uncontrolled taxpayers must be adduced.

Lufkin has requested that, in the event of a reversal here, we remand to the Tax Court to allow it to adduce the proper evidence. At oral argument, the Commissioner acquiesced in this disposition. We determine that justice requires such a course and thus remand to the Tax Court for further proceedings consistent with 26 C.F.R. § 1.482–2 (1972) and this opinion.[3]

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

Appellee's petition for rehearing calls to our attention that we erred in stating that the Regulation, 26 C.F.R. § 1.482–2 (1972), was not brought to the Tax Court's attention. We withdraw the sentence to that effect. Our opinion should not be read as considering or deciding any issue as to the validity of the Regulation nor as to its applicability to this specific situation. We in nowise intend that the Tax Court be bound by our decision to apply that Regulation to this case on remand. The Regulation was

3. Our reversal and remand is without prejudice to Lufkin's right to represent to the Tax Court the issue of whether

the burden of proof shifted to the Commissioner as a result of his belated filings of amendments to his answer.

discussed merely to demonstrate that it consistently applied the same interpretation to the underlying statute that we required be followed in our opinion. Except as stated herein, we adhere to our original opinion.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12), the Petition for Rehearing En Banc is denied.

The mandate shall reissue immediately.