ENGINEERING SALES, INC.,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

Roland E. CEDARHOLM and Elizabeth B. Cedarholm, Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

Nos. 74–1866, 74–1867.

United States Court of Appeals, Fifth Circuit.

March 27, 1975.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Chief, Appellate Section, Charles B. Burroughs, Jr. Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C., Gilbert E. Andrews, Acting Chief, Appellate Section, Wayman G. Sherrer, U. S. Atty., Charles D. Stewart, Asst. U. S. Atty., Birmingham, Ala., Jonathan S. Cohen, Arthur L. Bailey, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

R. Kent Henslee, Gadsden, Ala., for plaintiffs-appellees.

Before GEWIN, BELL and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Engineering Sales, Inc. (*Sales*) sued in the district court to recover taxes assessed and paid as a result of the Commissioner's allocations of income to it from a controlled corporation, Engineered Products, Inc. (*Products*) pursuant to 26 U.S.C. § 482. In a separate, consolidated action Ronald E. and Elizabeth B. Cedarholm sought to recover income taxes paid which were attributable to related dividends from *Products* to their children which, following the allocation, were assessed to Mr. and Mrs. Cedarholm as constructive dividends. We reverse the district court's partial award in the allocation suit for failure of proper proof. Reversal of the full recovery allowed in the constructive dividend action must follow.

*Sales* began business as a partnership, but was incorporated in 1966. Ronald E. and Elizabeth B. Cedarholm own 100% of its stock and are its principal officers. *Sales* is in the business of installing air-conditioning equipment and manufacturing some components of air-conditioning systems. *Products*, a related marketing company, began its business life with the same partners as *Sales*, but was incorporated in 1968. Mr. and Mrs. Cedarholm own 4 shares of its stock, and their 4 children own the remaining 996 shares. Taxpayers concede that *Sales* and *Products* are owned or controlled by the same interests within the meaning of Section 482.

In the years in question, *Sales* manufactured induced and natural draft cooling towers which were sold by *Products*. *Sales* charged *Products* the exact labor and equipment costs it incurred in these operations and, in addition, billed *Products* for 7.8% of the gross revenue which *Products* derived from tower sales. This mark-up percentage had been calculated as an approximation of the overhead expenses incurred by *Sales* in its manufacturing capacity, based upon the internal expenses of both corporations. It was not ever related to the cost at which a manufactured water tower could have been acquired from or sold to an unrelated business.

During the tax years in issue, *Products* profits from sales to third persons totaled 35,683.63 dollars. Under Section 482, the Commissioner determined that this entire amount of income should be allocated to *Sales*. The Commissioner further determined that 11,519.34 dollars distributed by *Products* to the Cedar-

holm children as a dividend, should be treated as constructively paid to Mr. and Mrs. Cedarholm.

The holding of the district court can be epitomized by the following excerpts:

> [The p]rincipal problem becomes not whether Engineered Products, Inc. is a sham which the Court finds it is not and has not been, but under Section 482, whether the income reported by Engineered Products should in whole or in part be treated as really the income of Engineering Sales, Inc.

> The Court in this type of case under Section 482 has certain equity powers as I view it in terms of seeing that there be a fair reflection of income on the two returns, giving, however, much credit and consideration to the determination made on behalf of the Internal Revenue Service.

> The Court concludes that some portion of the total net profits or income of the two operations can properly be attributed to the effort in selling these water towers, . . . .

> I conclude that a fair way for the Court to approach it is to simply conclude that the same percentage of income as measured as against sales should be true for Engineering Sales Corporation as for Engineered Products.

On this basis, the court disallowed 8,600 dollars of the Commissioner's 35,682.63 dollar allocation from *Products* to *Sales.*

With regard to constructive dividends, the Court concluded:

> I rule in favor of the taxpayers in this case and conclude that Mr. and Mrs. Cedarholm should not be held as having received or being accountable as constructively receiving it in some way these distributions made to their children.

> It may be that with the adjustments made, this presents some problems regarding the proper tax treatment of the distribution made to the children, but the children are not before the Court as to their tax returns and maybe [the earnings and profits of Engineered Products] would not result in the full distribution being taxable to them at least in this particular year.

On this basis the Court awarded full recovery of the taxes paid on the dividends constructed to Mr. and Mrs. Cedarholm.

The government contended, both in administrative proceedings and before the lower court, that *Products* was a sham corporation, or that, in the alternative, the entire income of *Products* should be allocated to *Sales* to reflect clearly the income of both businesses for tax purposes. It further contended that since the Commissioner had shifted all income of *Products* back to *Sales,* the stockholders of *Sales,* Mr. and Mrs. Cedarholm, must pay the tax on the dividends distributed to their children by *Products.*

The taxpayers contend: (1) the record contained evidence to support the court's finding that *Products* was not a sham but had a tax-valid business existence and contributed valuable sales efforts to the marketing of towers—thus the Commissioner's 100% allocation of *Products'* income to *Sales* was proven to be arbitrary; (2) the proof further sustained the court's equitable approach in calculating its own allocation by applying a percentage of profit on gross sales realized by both companies to *Products'* sales; (3) no sales took place between the companies—they only had an agreement to share expenses and the 7.8% calculation was used to apportion properly overhead costs under this agreement; (4) since *Products* was established to have a valid business existence, the reconstruction of the dividends it paid to the children was properly found to be arbitrary.[1]

▪ The district court's resolution of the Section 482 allocation action is at

---

1. Taxpayers also contended that the government has changed its approach from sole reliance upon a sham theory in the administrative proceedings and before the district court to its alternative theory of improper allocation and proof here. This contention is not borne out by the trial court record, and we reject it.

odds with the established precedent in this circuit. In a refund suit such as this the taxpayer bears a double burden. He must show that the Commissioner's assessment is arbitrary and he must further establish what the proper assessment should have been. Crosby v. United States, 496 F.2d 1384 (5th Cir. 1974); Bicknell v. United States, 422 F.2d 1055 (5th Cir. 1970); Broadhead v. Commissioner, 391 F.2d 841 (5th Cir. 1968); Duncan v. Commissioner, 173 F.2d 218 (5th Cir.), cert. denied 337 U.S. 959, 69 S.Ct. 1531, 93 L.Ed. 1756 (1949); Trippett v. Commissioner, 118 F.2d 764 (5th Cir.), cert. denied 314 U.S. 644, 62 S.Ct. 85, 86 L.Ed. 517 (1941). *Cf.* Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Bar L. Ranch, Inc. v. Phinney, 426 F.2d 995 (5th Cir. 1970).

In a Section 482 case, neither of the taxpayers' burdens can be carried by the production of evidence relating solely to the taxpayers' internal transactions with other controlled entities. He must adduce evidence of prices and terms which would have obtained had the sales or transfers been between unrelated parties. Lufkin Foundry & Machine Co. v. Commissioner, 468 F.2d 805 (5th Cir. 1972). *See also* 26 C.F.R. §§ 1.482–1(b)(c) and 1.482–2(e). This record contains no such "arms-length" proof.

The evidence adduced provided no basis to support the court's conclusion that some portion of the total net profits from the sales of towers was, in equity, due to be attributed to *Products*. The court concluded that *Products'* marketing service was of value, but this does not mandate a finding that its efforts must result in a share of the profits. These controlled entities were obliged to substantiate their calculations of these internal transactions by adducing some arm's-length pricing basis to support the claim that the Commissioner's allocation was arbitrary and to demonstrate the proper amount which should have been charged and received. This is true whether the inter-company actions involved sales of tangible goods or whether *Sales* was merely furnishing a manufacturing service to *Products. See,* 26 C.F.R. § 1482–2(b)(3) and (7)(ii)(a). If something of value passes between controlled entities in exchange for reimbursement, index proof based on transactions between uncontrolled businesses must be furnished to carry out the intent of the statute, which is to put controlled businesses on a par with uncontrolled businesses for tax purposes.

The district court recognized that its substantial ($^{28}\!/_{35}$ths) agreement with the government's allocation still produced a gross dislocation of *Products'* income from which the Cedarholm children had been paid dividends. It nevertheless awarded Mr. and Mrs. Cedarholm a full recovery of the taxes they had paid on the Commissioner's constructive dividends because the children were "not before the Court as to their tax returns." The Court speculated that *Products* might have had nonallocated earnings or profits from which the children's dividends could have been paid. At oral argument in this court, counsel for taxpayers suggested that the payment could have been a liquidating dividend, even if no earnings or profits had been present. Such indulgence in speculation is erroneous. The taxpayers' basic burden in this action is identical to that imposed on *Sales* in the Section 482 action—(1) prove the Commissioner's assessment arbitrary and (2) prove the correct assessment which should have been made. Crosby v. United States, *supra.* The very need to resort to speculation demonstrates that these burdens have not been met.

Given the Commissioner's valid determination that *Sales* should have reported the full income from tower sales, the claim of that income by *Products* was improper. As controlling shareholders and officers, the Cedarholms were subject to the assessment of a constructive dividend as to any portion of that improperly claimed amount distributed as a dividend by *Products*. Sammons v. Commissioner of Internal Revenue, 472 F.2d 449 (5th Cir. 1973). The Commissioner could have determined that the

inter-company tranfer was made primarily to create income for the Cedarholm children which was not taxable to their parents. The presence of some business justification for *Products* entity status and for its transactions with *Sales* would not make such a determination invalid. Sammons v. Commissioner, *supra.* The absence of countervailing proof by the taxpayer means that the Commissioner's assessment cannot be disturbed.

Each and both of the judgments appealed from are

Reversed.