Donald A. and Judith W. PECK, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 83–7751.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 2, 1984.

Decided Feb. 1, 1985.

Harry J. Kaplan, San Jose, Cal., for petitioners-appellants.

Elaine Ferris, Washington, D.C., for respondent-appellee.

Before TANG, SCHROEDER, and BEEZER, Circuit Judges.

PER CURIAM:

The Commissioner of Internal Revenue ("Commissioner") examined the Pecks' income tax returns for calendar years 1974, 1975, and 1976. The Commissioner issued notices of deficiency for each tax year, disallowing deductions for rent paid by the Pecks to Peck Leasing, Ltd. ("Leasing"), a corporation controlled by the Taxpayers. The Tax Court rejected the complete disallowance of the rental deduction but held that the rental deduction was excessive. It reduced the rental deduction by an amount representing gardening expenses and twenty-five percent of the property taxes and mortgage payments which the Pecks also paid. The Tax Court found that to the extent of such "excessive" rent, "income [had] been shifted from one commonly controlled entity to another" and the Commissioner properly disallowed the Pecks' rent deduction by this amount. The court therefore sustained a reduced rental deduction under 26 U.S.C. § 482. We affirm the Tax Court's decision.

I

FACTS AND PROCEEDINGS BELOW

As of 1974, the Pecks owned eight parcels of improved real property that was valued at $950,000.00 and subject to a total secured indebtedness of $506,585.00. For local property tax assessment purposes the land was valued at $283,000.00 and the improvements at $662,000.00.[1]

---

1. No appraisal testimony was received by the Tax Court. The parties agree that assessed val-

The Pecks formed Leasing in 1974 and conveyed to it the land, but not the improvements, in exchange for all of Leasing's stock. The land was conveyed subject to the terms of several security instruments, but the Pecks agreed to pay the indebtedness secured by the underlying mortgages or deeds of trust and hold Leasing harmless from the secured debt. The Tax Court determined that Leasing was formed for a legitimate business purpose: the leasing of automobiles and the generation of income in the event of an unexpected termination of the professional activities of Donald Peck. The Tax Court also found that Leasing used the rental income to acquire vehicles for lease.

Leasing leased the land back to the Pecks for a thirty-year term with two ten-year renewal options.[2] Under the leaseback, the Pecks were required to pay gardening expenses and real estate taxes. The Pecks continued to make mortgage payments on the notes secured by the eight parcels. The annual rent, $24,870.00, was calculated to yield nine percent[3] of the fair market value of the leased land. The lease provided for adjustments to the rent according to the Consumer Price Index every five years during the lease term.

The Commissioner disallowed all of the deductions for rent under I.R.C. § 482 and determined deficiencies for the years 1974, 1975, and 1976. According to the Commissioner, the annual rental did not reflect what would have been charged had the parties dealt at arm's-length. He argued that the disallowance was necessary to prevent evasion of taxes or to reflect clearly the income of the Taxpayers and Leasing. The Pecks petitioned for a redetermination of their taxes, challenging the section 482 adjustments.

The Tax Court found that the rent deduction was valid but reduced the amount of the deduction by the full amount of the

gardening expenses and twenty-five percent of the property taxes and mortgage payments. The court found that it was "highly unlikely an unrelated lessee in petitioners' position would have paid $24,870 per year for the use of the land while also carrying responsibility for taxes, mortgage payments, and gardening expenses...."

## II

## ANALYSIS

The Commissioner is authorized to allocate income and deductions between related taxpayers to prevent evasion of taxes or to reflect income clearly. Section 482 of the Internal Revenue Code states:

> In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary [of the Treasury] may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

26 U.S.C. § 482. Section 482 permits the Commissioner to place a controlled taxpayer on an equal footing with an uncontrolled taxpayer so that the true taxable income of the controlled taxpayer is equivalent to that of an uncontrolled taxpayer. Treas. Reg. § 1.482–1(b)(1). The Commissioner may examine income for understatement and may make adjustments, apportionments, or allocations of gross income and deductions that are necessary to effect parity between controlled and uncontrolled taxpayers. *Id. See generally* 3 B. Bittker,

---

ues are reasonable determinations of fair market value.

**2.** The lease also contained options in the event that the corporation desired to sell the land and in the event that the Pecks desired to purchase

the land. These options do not materially affect the determinations at issue.

**3.** Nine percent was the prevailing rate of interest at the time the leaseback became effective.

*Federal Taxation of Income, Estates and Gifts* ch. 79 (1981); Comment, *Section 482 and the Nonrecognition Provisions: Resolving the Conflict,* 77 Nw.U.L.Rev. 670 (1982).

 Section 482 gives the Commissioner broad discretion to place controlled taxpayers in the same position as uncontrolled taxpayers dealing at arms-length. *Aristar, Inc. v. United States,* 553 F.2d 644, 646, 213 Ct.Cl. 616 (1977); *Philipp Brothers Chemicals, Inc. v. Commissioner,* 435 F.2d 53, 57 (2d Cir.1970). The burden of persuasion is upon the taxpayer to show error in the Commissioner's allocation, and the allocation must be sustained unless it is unreasonable, arbitrary, or capricious. *Oil Base, Inc. v. Commissioner,* 362 F.2d 212, 214 (9th Cir.), *cert. denied,* 385 U.S. 928, 87 S.Ct. 287, 17 L.Ed.2d 211 (1966); *see Engineering Sales, Inc. v. United States,* 510 F.2d 565, 569 (5th Cir.1975). Factual determinations by the Tax Court will be accepted on appeal unless they are clearly erroneous. *See Thompson v. Commissioner,* 631 F.2d 642, 646 (9th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). Similarly, factual determinations by the Commissioner will be accepted on appeal if they are supported by substantial evidence. *B. Forman Co. v. Commissioner,* 453 F.2d 1144, 1152 (2d Cir.), *cert. denied,* 407 U.S. 934, 92 S.Ct. 2458, 32 L.Ed.2d 817 (1972).

 The leaseback required the Pecks to pay gardening expenses and the annual local real estate taxes imposed upon the land. These expenses are normally borne by the landlord or, if shifted to the tenant by the lease, result in a concomitant reduction of the fair market rent for the property.[4] The Commissioner quite properly did not allow the controlled taxpayer to have it both ways. *See* Treas.Reg. § 1.61–8(c)

("As a general rule, if the lessee pays any of the expenses of his lessor such payments are additional rental income of the lessor."); Treas.Reg. § 1.162–11(a) ("Taxes paid by a tenant to or for a landlord for business property are additional rent. . . ."). If the Pecks were negotiating from an arm's-length position, they would not have paid the gardening expenses and the annual real estate taxes in addition to approximately $25,000.00 in annual rent. The economic result of the Pecks' transaction with Leasing was to shift from Leasing to the Pecks an obligation to pay expenses in excess of fair market rent.

 As to the mortgage payments, the Pecks argue that they transferred the land to Leasing free of encumbrances and that this transaction must be recognized for tax purposes. They argue that because they, not Leasing, are responsible for the mortgage, the Tax Court erred in reducing their rent deduction by twenty-five percent of the mortgage payments.

The petitioners ignore the purpose of section 482. The purpose is to place controlled taxpayers on an equal footing with uncontrolled taxpayers so that the true taxable income of the controlled taxpayer is equivalent to that of an uncontrolled taxpayer. Treas.Reg. § 1.482–1(b)(1). The Tax Court found that the Pecks' computation of the rental charge "lacked any element of bargaining" and that they did "not come forward with any reliable evidence that those are terms that would have been arrived at had the parties dealt at arm's-length." The Tax Court determined that it was "highly unlikely an unrelated lessee in petitioners' position would have paid $24,870 per year for the use of the land while also carrying responsibility for taxes, mortgage payments, and gardening expenses. . . ."

---

4. "Fair market value" is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Treas.Reg. § 20.2031–1(b). *See generally* Goldberg, *Fair Market Value in the Tax Law: Replacement Value or Liquidation Value,*

60 Texas L.Rev. 833 (1982). Similarly, a "fair market rent" would be the rent charged by a willing lessor to a willing lessee, neither being under any compulsion to lease and both having reasonable knowledge of relevant facts. *Cf.* Treas.Reg. § 1.482–2(c)(2) (defining "arm's length rental charge").

As previously noted, the burden of persuasion is upon the taxpayer to show error in the Commissioner's allocation. *Oil Base, Inc. v. Commissioner,* 362 F.2d 212, 214 (9th Cir.), *cert. denied,* 385 U.S. 928, 87 S.Ct. 287, 17 L.Ed.2d 211 (1966). Furthermore, this court will not reverse the factual findings of the Tax Court unless they are clearly erroneous. *See Thompson v. Commissioner,* 631 F.2d 642, 646 (9th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). The Pecks failed to meet their burden in the Tax Court, and we cannot say that the findings of the Tax Court are clearly erroneous.

The decision of the Tax Court is AFFIRMED.

BEEZER, Circuit Judge, dissenting in part:

I concur in the court's opinion with respect to reducing the rent deduction taken by the taxpayers in an amount equal to gardening expenses and twenty-five percent of property taxes. These expenses are usually and customarily paid by landlords from the proceeds of rental income.

However, when the Tax Court reduced the rental deduction of Peck by twenty-five percent of the mortgage payments made by the taxpayers, it assumed that it was Leasing's legal obligation to make those payments. There is no evidence in the record from which I can find that Leasing is under any obligation to assume or pay any portion of the mortgage. The Tax Court, in effect, has rewritten the agreement between Leasing and Peck to require Leasing to bear the burden of twenty-five percent of the mortgage payments on real property which it purchased for full and fair consideration. Concomitantly, the Tax Court has reduced the value of the Leasing common capital stock purchased by Peck in an amount equal to the shifted mortgage installments. This allocation between the taxpayers and their related corporation is totally unnecessary to place controlled taxpayers in the same position as uncontrolled taxpayers dealing at arms-length. To the extent that the Tax Court shifted the consequences of mortgage payments in the guise of an adjustment to fair market rental, I respectfully dissent.