GLENSHAW GLASS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15986.   Promulgated September 13, 1949.

*Max Swiren, Esq., Joseph D. Block, Esq.,* and *Sidney B. Gambill, Esq.,* for the petitioner.

*Hobby H. McCall, Esq.,* for the respondent.

300

OPINION.

BLACK, *Judge*: *Issue 1.*—The question presented under this issue is whether the royalty payments during the base period years were attributable to the fraudulently induced decree and were abnormal deductions for petitioner and should, therefore, be restored to petitioner's base period income for the purpose of determining its excess profits tax credit for the taxable years herein. Petitioner contends that these royalty payments were (1) attributable to the decree and (2) were abnormal deductions for petitioner and therefore are within the meaning of section 711 (b) (1) (H) of the Internal Revenue Code. The pertinent provisions of the Internal Revenue Code are printed in the margin.[1]

Respondent contends that the evidence shows that the subject amounts paid to Hartford-Empire Co., with the exception of the $11,020.90 paid on or before the date of the court decree entered February 10, 1939, during the base period years were paid as royalties pursuant to contracts in existence prior to the decree. Respondent further con-

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

* * * * * * *

(b) TAXABLE YEARS IN BASE PERIOD.—

(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)):

* * * * * * *

(H) Payment of Judgments, and So Forth.—Deductions attributable to any claim, award, judgment, or decree against the taxpayer, or interest on any of the foregoing, if abnormal for the taxpayer, shall not be allowed, and if normal for the taxpayer, but in excess of 125 per centum of the average amount of such deductions in the four previous taxable years, shall be disallowed in an amount equal to such excess;

* * * * * * *

(K) Rules for Application of Subparagraphs (H), (I), and (J).—For the purposes of subparagraphs (H), (I), and (J)—

* * * * * * *

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

tends that the stipulated royalties paid to Hartford in 1937, 1938, 1939, and 1940, with the exception of the $11,020.90 mentioned, were not paid pursuant to any court decree and, therefore, do not fall within the provisions of section 711 (b) (1) (H) upon which petitioner relies. We think these contentions of respondent must be sustained. Petitioner concedes that the payments in question were royalties paid in accordance with the terms fixed in its contract with Hartford, but contends that if it had not been for the court injunction it would have terminated its contract with Hartford and used Shawkee feeders, for which it would have had to pay no royalties. Petitioner's contention in this respect is stated by its president in his testimony as follows:

> We paid royalties to Hartford during these years because we had to pay them. We were under injunction by the Court that we could not use the Shawkee feeder and there weren't any other feeders that we could get that would produce bottles. So that we could continue in business we were forced to pay royalties to Hartford. That is why we paid it.

Giving full faith and credit to this testimony and other similar testimony in the record, we still think it is clear that the payments here involved, with the exception of the $11,020.90, were paid as royalties under a contract and were not payments "attributable to any * * * decree against the taxpayer" within the meaning of section 711 (b) (1) (H). The title of subparagraph (H) is "Payment of Judgments, and So Forth." These payments here involved were not made in payment of any *liability* under a judgment or decree. We think that in order for petitioner to prevail in its contentions it would have to make a showing that the payments in question were made in discharge of a liability imposed by a judgment or decree. Such seems to have been the intent of Congress in enacting subparagraph (H). The report of the congressional committee of conference on the Second Revenue Act of 1940 had this to say about the subject section of the Internal Revenue Code:

> (8) An additional adjustment was provided, applicable only to taxable years in the base period, to the effect that deductions attributable to any claim, award, judgment, or decree against the taxpayer, or interest thereon, would not be required to be taken into account if, in the light of the taxpayer's business, it is abnormal for the taxpayer *to incur a liability of such character* or, if the taxpayer normally incurs liabilities of such character, the amount of the particular liabilities of such character in the taxable year is grossly disproportionate to the average amount of liabilities of such character in each of the four previous taxable years. [1940–2 C. B. 651. Italics added.]

From this, it seems to us, that Congress clearly intended for the "judgment or decree" to be in the nature of a liability.

Petitioner, in urging that the payments in question should be held to be "attributable to any * * * decree against the taxpayer" within the meaning of subparagraph (H), strongly relies on *Hartford-*

*Empire Co.* v. *Shawkee Mfg. Co., supra* (163 Fed. (2d) 474). We do not think that case is in point here. It did not in any sense involve an interpretation of 711 (b) (1) (H). One of the main things decided in that case was that, where patent and injunction decrees were procured by fraud, royalty payments made by defendants because an injunction forced them to retain royalty contracts with plaintiff could be recovered by defendants with interest, even though an injunction bond had not been given. We have no such question here. The effect of that suit was to permit petitioner to have restitution of all the royalties that it had paid Hartford during the base period years, plus expenses which it had incurred and also damages. Petitioner had paid out those royalties during 1937, 1938, 1939, and 1940 under its contract with Hartford; it had received deductions for them in the respective years, not as payments of any judgment or decree, but as payments of royalties, which they were. The Commissioner properly allowed the deductions as royalties. The beginning of our findings of fact on issue 1 states: "In the base period years the following amounts were paid by petitioner to Hartford-Empire Co. * * * as royalties on glass-feeding machines, and were claimed and allowed as deductions * * *." This finding is based on a stipulation of the parties. The fact that in a subsequent year it was discovered that these payments were obtained by fraud and petitioner was able to obtain restitution of the payments on that ground, it seems to us, does not alter the nature of the deductions in the years when they were claimed and allowed. It had been perfectly normal for many years for petitioner to pay royalties to Hartford. We do not think it was abnormal within the meaning of the statutes for it to pay them during the base period years here involved. It would doubtless have been abnormal, as we have already said, if they had paid these royalties in settlement of a court judgment or decree, but, as we have endeavored to point out, this was not done.

What we have said above does not apply to $11,020.90 which it is stipulated was paid by the petitioner to Hartford pursuant to the final decree entered February 10, 1939, by the United States District Court for the Western District of Pennsylvania in proceedings in equity No. 2791, entitled *Hartford-Empire Company* v. *Shawkee Manufacturing Company, et al.,* and of which amount the petitioner was allowed by respondent a deduction of $9,316.39 for the taxable year ended September 30, 1939. It seems to us that this $11,020.90 payment clearly comes within the provisions of section 711 (b) (1) (H) and that the $9,316.39 of this amount which was allowed as a deduction by the Commissioner in 1939 should be disallowed (restored to income) in computing petitioner's excess profits credit under Rule 50. We so hold.

*Issue 2.*—The question presented under this issue is whether respondent erred in disallowing certain compensation paid by petitioner to three of its officers. Respondent contends that the amount paid the three executive officers of petitioner is not reasonable compensation for services. The applicable section of the Internal Revenue Code is printed in the margin.[2]

In a former proceeding, *Glenshaw Glass Co.* (unpublished memorandum opinion, Oct. 14, 1946); affirmed per curiam (CCA-3), Oct. 21, 1947; certiorari denied, 333 U. S. 842, we held that for the year 1942 petitioner had not carried its burden of establishing that certain bonuses paid petitioner's executives were not, in fact, distributed as profits in the guise of compensation. We have before us now the tax years 1943 and 1944 in which bonuses were paid the same executives under a plan similar to the plan of 1942. However, in each of the three years separate action was taken by the board of directors establishing the bonus plan. Not only are the three bonus plans for the respective years separable, but a finding as to the reasonableness of salaries for the years 1943 and 1944 is necessarily based upon different factors, e. g., an increase in sales and profits and a heavier burden upon the executive officers. The finding made in *Glenshaw Glass Co.*, *supra*, on the question of salaries for 1942 does not make *res judicata* the question of the reasonableness of salaries for 1943 and 1944. *Commissioner* v. *Sunnen*, 333 U. S. 591. Cf. *National Bank of Commerce of Seattle*, 12 T. C. 717; *Maud H. Bush*, 10 T. C. 1110. The matter raised in this proceeding is not, in the language of the *Sunnen* case, *supra*, "identical in all respects with that decided in the first proceeding." We do not have here "the very same facts and no others." Therefore, the reasonableness of salaries for 1943 and 1944 is not *res judicata* and we are free to examine all the evidence in order that we may make a finding as to the reasonableness of salaries for these years.

Petitioner concedes that, if the amounts disallowed by respondent were a disguised distribution of profits, they are not deductible as a business expense. *Botany Worsted Mills* v. *United States*, 278 U. S. 282; *Glenshaw Glass Co.*, *supra*. Petitioner has proved, however, to our satisfaction that the salaries paid were for services rendered and they were not a distribution of profits.

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

The board of directors acted as an independent body and, though the Meyer brothers controlled 51 per cent of the stock through the voting trust, it can not be said that they dominated the board of directors, nor is it possible to conclude that the salaries were a distribution of profits and hence a breach of the fiduciary duty to the detriment of the remaining stockholders. A voting trustee can not legally use his power for the aggrandizement, preference, or advantage of the fiduciary to the exclusion or detriment of the *cestui*. Cf. *Pepper* v. *Litton*, 308 U. S. 295. There is no evidence of a breach of this fiduciary obligation of the Meyer brothers and there is no reason to assume it.

A leading management engineer in the glass industry testified that petitioner ranked with the top glass manufacturers in the country and that he regarded the salaries, plus bonuses, paid in each taxable year as reasonable. Not only were the salaries paid during these years reasonable, but there is evidence showing that in prior years the executives of petitioner were receiving an unreasonably low salary.

The financial record of petitioner discloses that it has prospered since the Meyer brothers have managed it. The net worth of petitioner has increased steadily and profits have been earned in increasing amounts, with a like increase of dividends to petitioner's stockholders. Perhaps some of the increase in petitioner's business is attributable to the war; however, increased business meant increased work and new problems confronted petitioner's executives, for which they are entitled to compensation. *Roth Office Equipment Co.* v. *Gallagher*, 172 Fed. (2d) 452. There is evidence showing that petitioner's salaries were comparable to those of other manufacturers in the glass industry.

On the basis of all the evidence, including the work of the three executives and the record of petitioner in the glass industry, we hold that the salaries paid petitioner's three executives for the taxable years 1943 and 1944 were reasonable. Cf. *Wright-Bernet, Inc.* v. *Commissioner*, 172 Fed. (2d) 343. On this issue the Commissioner is reversed.

*Decision will be entered under Rule 50.*