**JOURNAL–TRIBUNE PUBLISHING COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17270.**

United States Court of Appeals
Eighth Circuit.

July 8, 1965.

---

Washington, D. C., made argument for respondent and filed brief with Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Edward L. Rogers, Attys., Tax Div., Dept. of Justice, Washington, D. C.

Before JOHNSEN, Chief Judge, and VOGEL, VAN OOSTERHOUT, MATTHES, BLACKMUN, RIDGE and MEHAFFY, Circuit Judges.

JOHNSEN, Chief Judge.

In Journal-Tribune Publishing Co. v. Commissioner, 216 F.2d 138, 8 Cir. 1954, we reversed a holding of the Tax Court, 20 T.C. 654, as to petitioner's taxable year 1948, that replacement made by it during that year of some machinery and equipment in the newspaper plant of which it was lessee was not subject to deduction as business expense, but only to depreciation allowance thereon as capital assets.

The deduction taken by petitioner for the 1948 replacement was thereupon given acceptance by the Commissioner (no petition for certiorari to our decision was filed). Deductions for other such replacements in taxable years subsequent to 1948, down to 1957, were similarly permitted to stand. As to the replacement made in petitioner's taxable year 1957, however, the Commissioner reasserted his 1948 position, refused to recognize the replacement as business expense, and determined a tax deficiency against petitioner in relation to it.

The Tax Court also, in a comprehensive and well considered opinion, made re-expression of the view which it had taken as to the 1948 replacement; set out its reasons for not regarding our previous decision as controlling of the question of 1957 replacement treatment in collateral estoppel; and upheld the Commissioner's deficiency determination. It is this decision, 38 T.C. 733, which is now before us for review on its replacement treatment.

John Enrietto, Chicago, Ill., made argument for petitioner and filed brief with Frank C. Niswander, Chicago, Ill., and Hamel, Morgan, Park & Saunders, Washington, D. C.

John B. Jones, Jr., Acting Asst. Atty. Gen., Tax Division, Dept. of Justice,

The case was initially placed upon the calendar of and heard by a three-judge panel of the Court in usual course. Upon

recommendation of the panel, we vacated the submission and set the matter for argument before the Court en banc.

■ We are of the opinion that our previous decision is not controlling on the tax question for the separate year and the separate machinery involved, as a matter of collateral estoppel, but have concluded that the decision should on the elements of petitioner's situation be adhered to and given application as a matter of stare decisis, within what we regard as the actual scope and significance of it.

It is not necessary to repeat all the details set out in the opinion and in the two opinions of the Tax Court. Only the facts immediately salient on our conclusion here will be related.

Petitioner had been formed to enable a merger in publication to be effected of the two separately-owned daily newspapers in Sioux City, Iowa. Each publisher leased to petitioner the right of publishing its paper ["the conduct of its newspaper business"] and "the subscriptions, good will, publishing and engraving equipment, machinery, contracts, franchises and all other property, tangible and intangible (excepting the real estate in which said property is housed)", for carrying on the publication. Petitioner bound itself to each publisher to "use the demised property and the rights and privileges so demised by the lessor, in the publication of the newspaper" and "in every respect (to) exert its best endeavor in the upkeep and publication of said newspaper". Two papers thus were put out by petitioner, a morning and Sunday paper under one name and an evening paper under another.

Both leases ran for a term of 99 years, commencing in 1941. Petitioner was to pay an annual cash rental of $30,000 under one lease and $20,000 under the other, or a total of $50,000, out of net earnings. Additionally, as part of the consideration under each lease and in connection with its duty to continue publication, petitioner assumed the respon-

sibility and obligation throughout the term, as our previous opinion held, 216 F.2d at 140 and 141, "of maintaining the upkeep of the plant and equipment at a standard established and maintained at the time it took over the properties from its lessors." "It was not only obligated to pay certain rentals but in addition it was obligated to make expenditures in the maintenance of the property"— the scope of its obligation in this respect being "to maintain the standard of upkeep." Ibid.

In keeping the publication facilities up to this standard, petitioner was given the power "to sell or otherwise dispose of any of the physical property now or hereafter used in connection with the operation of said newspaper plant", with the duty of accounting to the lessors for the proceeds but with a right to use such proceeds "in the purchase of replacements and additions and improvements". 20 T.C. at 661. Any replacements or additions or improvements which petitioner made became the property of the lessors jointly in their respective 60% and 40% rental and reversionary interests.

Section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A., as applicable to the situation, provided for deduction of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." This provision, revised as to form but identical in language, has been continued in the Internal Revenue Code of 1954 as § 162 (a), 26 U.S.C.A.

It was because of petitioner's continuing obligation to make replacements at the times that these would become necessary to maintain the plant standard for publication purposes as taken over by it, and because what petitioner had done in 1948 was merely a replacement of "items of similar machinery and equipment that

were discarded because of wear and tear", and not the supplying to itself of something in replacement which would provide an economic advantage and benefit in its business extending beyond that standard, that our previous opinion regarded the expenditure as having the significance of ordinary and necessary business expenses to petitioner in the special situation. This is the scope of the holding of the opinion, as we think it is required to be read.

The effect of the opinion thus necessarily was to view the replacement as not representing as to petitioner, within the capital expenditure provisions of § 24, Int.Rev.Code of 1939 [§ 263, Int. Rev.Code of 1954] either an "amount paid out * * * for permanent improvements or betterments made to increase the value of any property or estate," under subd. (a) (2) of that section, nor representing, under subd. (a) (3), an "amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made."

The opinion recognized that "the purchase of additional property in the nature of a betterment" would constitute a capital expenditure and would not be deductible as business expense, and in fact it made affirmance of the tax liability determined against petitioner for some purchases of that nature which it had made in 1948. 216 F.2d at 142. On this aspect, quotation was made in the opinion from Duffy v. Central Railroad Co. (1924), 268 U.S. 55, 63–64, 45 S.Ct. 429, 431, 69 L.Ed. 846, as follows:

"Expenditures, therefore, like those here involved, made for betterments and additions to leased premises, cannot be· deducted under the term 'rentals,' in the absence of cir-

cumstances fairly importing an exceptional meaning; and this we do not find in respect of the statute under review." [1]

The position taken by the Commissioner and the Tax Court as to the 1948 replacement was (as it is here as to the 1957 replacement) that the purchase of any assets "which have a useful life in excess of 1 year" cannot under any circumstances qualify for deduction as ordinary and necessary business expenses under § 23(a) (1) (A), supra, but in all situations they "must in their nature be held to be capital assets", under § 24 (a) (1), supra. 20 T.C. at 662. The term "capital assets" is not used in § 24(a), but, as noted above, its language, insofar as here pertinent, is "betterments made to increase the value of any property or estate" of the taxpayer.

Our opinion treated a replacement by petitioner, made when necessary, for keeping up the physical and production standard of the plant, to assure performance of petitioner's obligation to continue publication and to protect the lessors' rights of reversion, as not representing "betterments made to increase the value" of petitioner's leasehold estate. § 24 (a) (2), supra. In this connection, it is to be noted that the lease was without provision, and from its nature none would seem to be capable of being implied, permitting petitioner to sell its leased rights of publication and use of the plant for carrying out its obligation to make such publication. Thus the leasehold would not have basis for any increase in value to occur to petitioner on that conventional economic aspect.

Within the effect of our opinion, a value increase to petitioner from replacement could in the situation only come from the replacement being such as to

1. The opinion in Duffy distinguished between expenditures of "maintenance" or "upkeep" and those of "additions and betterments" or "investment". It treated all of the matters there involved as being "additions and betterments", but added this observation in a footnote: "Perhaps a critical analysis of the detailed statement found in the record might reveal items of minor importance which are of this character [maintenance or upkeep], or which might be classed as 'rentals or other payments'; but since no point appears to be made in respect to such a differentiation we do not consider it". 268 U.S. at 62, 45 S.Ct. at 430, note 2.

provide a facility for economic advantage and benefit not existing on the standard taken over, and with purchase thereof having been made for the purpose of obtaining this additional economic advantage and benefit in connection with the replacement.

Durability or length of useful life of any replacement, where it was not one which added a feature or a factor of economic advantage and benefit in the business beyond the standard taken over, would not within the concept of our previous opinion involve any question of value increase to petitioner's estate, since the obligation to keep the publication facilities up to the standard taken over was a continuing one throughout the term of the lease.

Thus, whether petitioner might in making replacement purchase new machinery or equipment for meeting the maintenance and publication standard taken over, or might purchase second-hand machinery and equipment also meeting that standard but necessarily capable of doing so only for a shorter period and so subjecting petitioner to earlier further replacement, there would, because of petitioner's continuing obligation to keep up the standard, exist no difference in the value to it of its estate so as to be able to give rise on that basis and in that sense to a capital asset.

Nor, within this aspect, would there as to petitioner's estate be any increased value to it from the fact that between the time of taking over the facilities and of making replacement, or between one time and another in making replacement, higher prices had to be paid by it for machinery and equipment necessary to fulfill its obligation. To repeat: Under our previous decision, increased value in petitioner's estate as a capital asset concept would not arise in the situation from a replacement made, except as such replacement provided facility for economic advantage and benefit to petitioner not existing in what it had taken over under the lease. Only to the extent of the additional economic advantage and benefit which the replacement was capable of

providing in its business would there be increased value or betterment of petitioner's estate as a capital asset concept under § 24(a) (2), Int.Rev.Code 1939 (§ 263(a) (1), Int.Rev.Code 1954), supra.

What was involved in the 1948 replacement was new machinery and equipment having a purchase price or cost to petitioner of $13,873.05. What was involved in the 1957 replacement, which is now before us, was a new printing press and auxiliary equipment, for which a deduction of $351,455.45 was made by petitioner for the taxable year. Of this amount, approximately $40,000 was for a "color half-deck" to make possible the printing of multi-color advertising, which the Tax Court found did not in any sense represent a replacement but constituted an addition, 38 T.C. at 748; and this finding is not challenged here.

But beyond the aspect of the color half-deck as a separate facility, the purchase of the printing press was itself necessary for use in conjunction with the color deck to enable petitioner to produce multi-color advertising in its newspapers. The press which was replaced, even if it had not been worn out (it was sold as junk), did not have the ability feasibly for adjunctive adaptation to the use of a color deck for the production of multi-color work. In the correlation of the new press to the use of a color deck, and thereby to become able to handle multi-color advertising, the press thus would itself be serving in necessary capacity to provide an economic advantage and benefit to petitioner beyond that which the one it replaced was capable of supplying.

It would therefore in this respect have increased the value of petitioner's estate to it. There probably were other ways in which the new press gave petitioner some economic advantages and benefits which the old facility did not have the capacity to contribute, and by which it therefore also similarly increased the value of petitioner's leasehold estate. These are matters for the Tax Court on remand of the case.

The new press replaced one which petitioner had purchased second-hand in

1949 at a cost of $147,259.35 to replace presses taken over by it from the lessors in 1941. Following our decision as to petitioner's right of deduction for its 1948 replacement, the Commissioner dropped the challenge which he had made to the $147,259.35 press replacement and permitted petitioner's deduction therefor to stand. And, as noted above, deductions made by petitioner for replacements in other taxable years were similarly thereafter, down to 1957, not challenged by the Commissioner.

■ The amounts involved in these replacements have varied. But the amount necessary to be paid to effect a replacement would not in itself be determinative of whether a capital expenditure was involved, any more than, as indicated above, would the fact that a higher price had had to be paid for a replacement than the machine replaced had cost, make the situation one of capital investment. Indeed, along this same line, the Tax Court, although holding the replacement to be a capital expenditure because it had a useful life in excess of a year, observed that "(o)bviously a new machine embodies the latest design and structural changes resulting from changes in the manufacturing art, but this does not in itself affect the question of whether the new machine is a replacement of the old". 38 T.C. at 748.

In making reversal of the Tax Court's decision because of our previous opinion, we are doing so, as indicated above, not on the basis of collateral estoppel, but on the basis of adhering to and giving application to our previous decision as a matter of stare decisis in relation to petitioner's situation.

■ The leading case of Commissioner v. Sunnen (1948), 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, emphasized the caution which must be exercised in applying the doctrine of collateral estoppel

to income tax cases for different taxable years and as pertinent here summarizingly said: "But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case." 333 U.S. at 601, 68 S.Ct. at 721.

■ As to our determination to allow our previous decision to stand and be given application as a matter of stare decisis to petitioner's situation, within its scope and significance, as discussed above, this has been prompted by a number of considerations. Among them is the fact that the view there taken is not without some support for its principle, as we think the cases cited in the opinion indicate. Further, the previous proceeding appears to have been intended by the parties as a test case, in that, while it was pending, challenge was made by the Commissioner, as noted above, to petitioner's 1949 press-replacement deduction of $147,259.35, but after our decision this deduction was recognized and allowed, as were at the same time also replacement deductions for the years 1950 and 1951, in the amounts of $18,758.98 and $14,125.14, respectively.[2] All of the replacements made by petitioner, including the one here involved, were, within § 263(a) (2) Int.Rev.Code 1954, matters for which there had been no other allowance. And it would appear that petitioner's deductions of replacements as business expenses have not on the history of its 15-years operations, inclusive of the taxable year 1957 here involved, given rise to any tax inequity against the Government. Petitioner's deductions for maintenance on this basis have amounted to 9.49% of its average taxable net income for the 15-year period, which, as petitioner points out, is less than the average depreciation allowance in its industry would have been for the period, if its accounting plan had from the start been set up on that basis.

---

**2.** For petitioner's taxable years 1952 and 1953, replacements totaling over $46,-000 have similarly been allowed to stand

after examination of the returns by a revenue agent.

The decision of the Tax Court as to its replacement treatment is reversed, and the case is remanded for further proceedings, not inconsistent with this opinion.

Reversed and remanded.