Donald A. Peck and Judith W. Peck, Petitioners v.
·Commissioner of Internal Revenue, Respondent

Docket No. 17904-81.         Filed January 28, 1988.

*Harry J. Kaplan,* for the petitioners.
*Rebecca T. Hill,* for the respondent.

OPINION

Nims, *Judge:* This matter is before the Court on respondent's motion for partial summary judgment under Rule 121.[1] The parties submitted a stipulation of facts which consists of the stipulation of facts with exhibits from petitioners' prior Tax Court case, copies of petitioners' Federal income tax returns for the years in issue, and schedules of property taxes paid for the years at issue. By order of the Court, the deficiency notice was also made part of the record, not having been previously submitted. There being no genuine issue as to any material fact on the issue of whether collateral estoppel applies in this case, a partial summary adjudication is appropriate under Rule 121.

Respondent determined deficiencies in petitioners' income tax in the respective amounts of $15,815 and $15,952 for 1977 and 1978, based primarily upon the disallowance of deductions for land rent in the amount of $24,870 for each of these 2 years.[2] At a hearing on respondent's motion for leave to file amendment to answer (by which the issue of

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure. Except as otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue.

[2]The 1977 and 1978 deficiencies were also based upon certain adjustments now agreed to by the parties and mathematical adjustments to medical expense deductions required by the disallowance of the rent deductions and the other unrelated adjustments.

collateral estoppel was raised), respondent's counsel modified the deficiencies determined by the Commissioner as follows:

MS. HILL: * * * I would move for a motion for [partial] summary judgment which would be in a different amount from the amount set forth in the notice, because if, indeed, summary judgment does apply, then it's about two-thirds of the amount that was disallowed in the notice that the court had disallowed in the previous case.

\* \* \* \* \* \* \*

If collateral estoppel applies, it applies also against the government, and the government doesn't get the entire deficiency * * * . So, I would file a motion for [partial] summary judgment and request a decision be entered in a lesser amount.

The issue before the Court is whether *Peck v. Commissioner*, T.C. Memo. 1982-17, affd. 752 F.2d 469 (9th Cir. 1985) (*Peck I*), collaterally estops petitioners from relitigating for the years in question the issue of whether petitioners' rental payments to their controlled corporation exceeded what would have been fair rental in an arm's-length transaction.

## Background

Petitioners were residents of Saratoga, California, at the time they filed their petition in this case.

On September 11, 1974, petitioners created Peck Leasing, Ltd. (Peck Leasing), a California corporation. At that time, petitioners owned six parcels of residential rental real estate and two parcels of commercial rental real estate. Only the land was transferred to Peck Leasing. Petitioners retained the improvements.

At the time of the transfer to Peck Leasing, the land and improvements of all eight parcels had a total value of at least $950,000, the value of the land alone being $283,000; all mortgage liability against the property was nonrecourse and totaled $506,585. At about the time the land was transferred to Peck Leasing, petitioners leased the land back to themselves. The annual rent paid was $24,870 for the first 5 years of the lease. The leases provided that after the first 5 years rent would increase in accordance with increases in the Consumer Price Index. The annual land rent provided for in the leases was approximately 9 percent

of the total value of the land. Petitioners paid the interest and principal with respect to loans secured by both the land and building portions of the properties.

Peck Leasing used the cash-flow from the land rents to embark on an automobile leasing business. At the time of the trial of *Peck I*, Peck Leasing operated a fleet of automobiles with value in excess of $600,000. This Court found in *Peck I* that the transfer of real estate to Peck Leasing and the subsequent leaseback were valid transactions and would be recognized for tax purposes. The Court also held, under section 482, that with respect to the years then before the Court, payment of 25 percent of the taxes on the eight parcels, 25 percent of the mortgage payments, and all of the gardening expense were, when added to the rental payments provided under the leases, payments in excess of what would have been negotiated by parties to an arm's-length transaction. In so concluding, we stated: "petitioners have failed to show respondent abused his discretion when he determined petitioners paid 'excessive' rent."

The Ninth Circuit affirmed the Tax Court in a split decision, discussed *infra.*

The following table reflects the amounts of mortgage payments, taxes, and gardening expenses related to the eight properties paid by petitioners for the years 1974 to 1978, inclusive:

| Item | 1974 | 1975 | 1976 |
|---|---|---|---|
| Mortgage payments | $52,692.00 | $52,692.00 | $52,692.00 |
| Taxes | 22,070.94 | 23,158.78 | 20,740.18 |
| Gardening expenses | 843.82 | 796.53 | 1,083.01 |
| | 1977 | 1978 | Totals |
| Mortgage payments | 48,306.13 | 48,236.42 | 254,618.55 |
| Taxes | 23,601.16 | 10,712.62 | 100,283.68 |
| Gardening expenses | 873.42 | 964.06 | 4,560.84 |

In determining the portion of the taxes and mortgage payments (principal and interest) attributable to the land in *Peck I*, we directed the parties to use the tax assessor's ratio of allocating 25 percent of the total property market value to the land. All gardening expenses were attributed to the land. T.C. Memo. 1982-17, n. 8.

The deficiency notice herein is dated April 13, 1981, and the petition was filed on July 13, 1981, both predating our

opinion in *Peck I* (published January 12, 1982). Thus, there is no problem of timing due to the pendency of a related case. See *Union Carbide Corp. v. Commissioner,* 75 T.C. 220, 252 (1980), affd. per curiam 671 F.2d 67 (2d Cir. 1982).

Respondent made the following determination in the deficiency notice regarding the Peck Leasing transactions which are before the Court:

### Explanation of Adjustments

(a) During 1977 and 1978 you engaged in transactions with Peck Leasing, Ltd., a corporation owned or controlled by you, from which you claimed a deduction for land rent in the amounts of $24,870.00 in each year. The deduction is being disallowed under Section 482 of the Internal Revenue Code of 1954 in order to prevent evasion of taxes or clearly to reflect your income and the income of Peck Leasing, Ltd. Accordingly, your gross income is increased $24,870.00 in each year.

The petition alleges, among other things, that respondent erroneously increased the taxable income of petitioners "by disallowing their deduction for land rent paid in the tax years 1977 and 1978 in the amount of $24,870.00 in each year." Thus, the issue raised here is the same issue that was resolved by *Peck I.*

### Discussion

This case presents an archetypical opportunity for the application of collateral estoppel. See *Lark Sales Co. v. Commissioner,* T.C. Memo. 1976-291. As required by Rule 39, respondent has affirmatively pleaded collateral estoppel by an amendment to answer filed with leave of Court on January 26, 1987. We of course recognize that as applied to tax litigation, each year creates a new cause of action even if the issue arises from a continuing transaction. *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948). As noted by the Supreme Court in *Sunnen,* res judicata precludes parties to a suit and their privies from contesting a cause of action on which a final judgment has been entered on the merits by a court of competent jurisdiction. Thus, under res judicata, the parties would be precluded from relitigating the tax years 1974 through 1976 but are not precluded from litigating 1977 and 1978.

However, as we said in *Lark Sales Co. v. Commissioner, supra,* "A different situation arises where the subsequent

litigation involves a new cause of action [because different tax years are involved]. In that case, although res judicata is inapplicable, collateral estoppel may be appropriate to preclude redundant litigation if each of the necessary prerequisites are met."

In *Montana v. United States*, 440 U.S. 147 (1979), the Court stated that the appropriate application of collateral estoppel turns on the answers to three questions:

first, whether the issues presented by this litigation are in substance the same as those resolved against the United States in [the prior suit]; second, whether controlling facts or legal principles have changed significantly since the [prior] judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion. [440 U.S. at 155.]

We applied these rules in *Union Carbide Corp. v. Commissioner*, 75 T.C. 220 (1980), affd. per curiam 671 F.2d 67 (2d Cir. 1982). This was a case which addressed the question of whether the legal determination that a regulation is invalid may give rise to an estoppel. 75 T.C. at 254. Unlike *Union Carbide*, the case now before us is purely factual. The three-pronged rubric provided by the Supreme Court in the *Montana* case embodies a number of detailed tests developed by the courts to test the appropriateness of collateral estoppel in essentially factual contexts.

Basically, collateral estoppel precludes parties (and their privies) from relitigating issues actually and necessarily litigated and decided in a final prior judgment by a court of competent jurisdiction. *Gammill v. Commissioner*, 62 T.C. 607, 613 (1974). For collateral estoppel to apply, at least in a factual context, the following conditions must be met:

(1) The issue in the second suit must be identical in all respects with the one decided in the first suit. *Commissioner v. Sunnen, supra* at 599-600.

(2) There must be a final judgment rendered by a court of competent jurisdiction. *Commissioner v. Gammill, supra* at 613.

(3) Collateral estoppel may be invoked against parties and their privies to the prior judgment. *Commissioner v. Gammill, supra* at 614, 615.

(4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision. *Commissioner v. Sunnen, supra* at 598, 601.

(5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. *Commissioner v. Sunnen, supra* at 599-600.[3]

We now apply the above tests to this case. The only contested issue in each of petitioners' two cases is identical each to the other in all respects, namely, to what extent, if at all, petitioners are entitled to deduct rents paid to their closely held corporation under the provisions of lease contracts which were coextensive over the 3 years of the first case and the succeeding 2 years of this case.

The prior case was concluded by an opinion by this Court on the merits, and decision was entered under section 7459, which was affirmed on appeal without modification by the U.S. Court of Appeals for the Ninth Circuit. 752 F.2d 469. No petition for certiorari having been filed, the Tax Court decision has become final under section 7481. The jurisdictional competency of the prior judgment is uncontested.

There is complete identity of the parties. Both petitioners and respondent were parties to the prior judgment and are bound by it. Thus, even the strictest requirements of mutuality are satisfied.

The issue in the present case was fully litigated in the prior case and was essential to the result and the decision based thereon in the prior case. To reiterate, in *Peck I,* respondent determined a disallowance of all of the rent for each of the first 3 years under the eight leases, and we modified the Commissioner's determination by allowing deduction of the rent but reducing it by 25 percent of the

---

[3]This Court has also held that when the issue sought to be estopped is factual in nature, it must be an ultimate fact essential to both judgments rather than merely evidentiary. *Amos v. Commissioner,* 43 T.C. 50, 54 (1964), affd. 360 F.2d 358 (4th Cir. 1965). This rule was first promulgated in *The Evergreens v. Nunan,* 141 F.2d 927 (2d Cir. 1944). The *Evergreens* rule has been subjected to criticism based primarily upon the difficulty in administering a distinction between ultimate and mediate facts and the lack of correspondence of such a distinction to any intelligible reasons for limiting preclusion. See, e.g., *Synanon Church v. United States,* 820 F.2d 421, 426-427 (D.C. Cir. 1987), and the cases cited therein; 18 Wright, Miller & Cooper, Federal Practice and Procedure, sec. 4424, n. 16 (1981 & Supp. 1987), and the cases cited therein; 1 Restatement, Judgments 2d, sec. 27, comment j (1982). We need not pursue this point, however, because the distinction between ultimate and evidentiary facts is not in issue in this case.

payments on the mortgages, 25 percent of the property taxes on the eight parcels, and all of the gardening expenses incurred in connection therewith. Since the lease terms did not change for the first 5 years, which included the 3 years litigated in the first case and the 2 years being litigated here, there can be no plausible basis for deviating here from the prior result.

As we found in *Peck I,* "After the first five years, the rent was tied into the Consumer Price Index, with an increase in the annual rent following a like percentage increase in the index." T.C. Memo. 1982-17, 43 T.C.M. 291, at 293, 51 P-H Memo T.C. par. 82,017, at 46. But under the terms of the leases, any rent increases tied into the Consumer Price Index kicked-in only after the years now before the Court, not before or during these years. Had the present case been consolidated for trial with the first case, one uniform result would necessarily have obtained.

In *Peck I,* the parties were directed to compute the amount of such "excessive" rent by reducing the $24,870 annual rent by 25 percent of the mortgage payments and taxes and all of the gardening expenses. We make the same direction here.

As already discussed, the controlling facts have not changed since we decided *Peck I,* and petitioners have not drawn our attention to any changes in the applicable legal rules. Thus, the fifth and final condition precedent to the application of collateral estoppel has been met.

Petitioners essentially ask us to reconsider our prior opinion, notwithstanding the fact that it has been appealed and affirmed by the Circuit Court. In support of this, they first argue that "The issue of what is fair market rent in 1974 is clearly distinct from what is fair market rent in 1978." The argument now made, that fair rental value is to be determined on a year-to-year basis, even though a uniform annual rent is fixed at the outset under a long-term lease, was not an argument raised in *Peck I,* and we feel confident that it did not occur to petitioners to raise it in that case. It is unsettling, to say the least, to contemplate a trial in which such an argument would be pursued, particularly if a number of taxable years were involved.

Petitioners ask us to draw an analogy between annual lease payments and other "continuing issue" payments, such as bonus payments computed according to the same percentage of profits, citing *Glenshaw Glass Co. v. Commissioner*, 13 T.C. 296 (1949). First, petitioners misstate the facts in *Glenshaw Glass*. As stated at page 306 of the opinion in that case, the bonuses for the years there sub judice were paid under a plan "similar" to but not the same as that of the prior year, and for each of the 3 years in question, separate action was taken by the board of directors.

If any guidance is to be drawn from the compensation area, the regulations provide an apt analogy. They provide, in section 1.162-7(b)(3), Income Tax Regs., that "The circumstances to be taken into consideration are those existing at the date when the contract for services [for "services" read "rent"] was made, not those existing at the date when the contract is questioned."[4]

Petitioners also cite *Journal-Tribune Publishing Co. v. Commissioner*, 348 F.2d 266 (8th Cir. 1965), for the proposition that the Circuit Court "refused to apply collateral estoppel to issues regarding deductibility of expenses under a 15 year lease." Again, petitioners misstate the case. The Eighth Circuit in fact held that although it agreed with the Tax Court that the Circuit Court's prior decision (relating to the deductibility of replacement cost for machinery as a business expense by a taxpayer who was required by a lease to maintain certain premises and equipment at a certain standard) was not controlling under collateral estoppel for a different year and a different piece of equipment, nevertheless the Circuit Court would adhere and give application to its prior decision under stare decisis. 348 F.2d at 268. Thus, the case upon which petitioners themselves rely strongly supports the conclusion that even were collateral estoppel for some undivined reason not applicable here, the doctrine of stare decisis itself would impel us to apply our prior result.

---

[4]We note that we applied the same test in *William E. Davis & Sons, Inc. v. Commissioner*, T.C. Memo. 1981-178:

"The issue, therefore, in this case is whether the lease was reasonable and fair *when executed* such that unrelated parties dealing at arm's-length would have entered into a similar rental agreement. * * * [Emphasis added.]"

Petitioners place heavy emphasis upon the opinion of Judge Beezer in *Peck v. Commissioner,* 752 F.2d at 473, dissenting in part. Judge Beezer disagreed with this Court's reduction of the rental deductions by 25 percent of the mortgage payments on the ground that there was no evidence that Peck Leasing was under any obligation to assume or pay any portion of the mortgage, and that we had in effect rewritten the agreement between Peck Leasing and Donald Peck to require Peck Leasing to bear the burden of 25 percent of the mortgage payments on property which it purchased for full and fair consideration. Petitioners maintain that under the authority of *McDonough v. Commissioner,* T.C. Memo. 1982-236, they should now be permitted to offer evidence that Peck Leasing did not assume the mortgages. Petitioners seize upon a statement in the *McDonough* case to the effect that "Because that case [*McDonough v. Commissioner,* T.C. Memo. 1977-50, affd. 577 F.2d 234 (4th Cir. 1978)] turned on a failure of proof, we do not decide the present case on the basis of collateral estoppel."

We need not explore the ramifications of a failure of proof viz-à-viz the application of collateral estoppel in this case, however, because the majority opinion of the Circuit Court in *Peck I* addresses petitioners' complaint and, by doing so, renders their failure of proof argument moot. The Circuit Court stated:

> As to the mortgage payments, the Pecks argue that they transferred the land to Leasing free of encumbrances and that this transaction must be recognized for tax purposes. They argue that because they, not Leasing, are responsible for the mortgage, the Tax Court erred in reducing their rent deduction by twenty-five percent of the mortgage payments.
>
> *The petitioners ignore the purpose of section 482.* The purpose is to place controlled taxpayers on an equal footing with uncontrolled taxpayers so that the true taxable income of the controlled taxpayer is equivalent to that of an uncontrolled taxpayer. Treas. Reg. sec. 1.482-1(b)(1). The Tax Court found that the Pecks' computation of the rental charge "lacked any element of bargaining" and that they did "not come forward with any reliable evidence that those are terms that would have been arrived at had the parties dealt at arm's-length." The Tax Court determined that it was "highly unlikely an unrelated lessee in petitioners' position would have paid $24,870 per year for the use of the land while

also carrying responsibility for taxes, mortgage payments, and gardening expenses * * * ''
[752 F.2d at 472; emphasis added.]

Proof as to whether Peck Leasing assumed any obligation with respect to the mortgages would thus be unavailing to petitioners' cause.

Respondent's motion for partial summary judgment will be granted.

To reflect the foregoing and concessions, and for purposes of recomputation of the medical expense deductions,

*An appropriate order will be issued and decision will be entered under Rule 155.*